IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

CLIFFORD THOMAS NULL, JR.,
    Plaintiff,

vs.                                        Case No. 5:11cv315/MMP/EMT

MEDICAL STAFF, et al.,
    Defendants.
_____/

## REPORT AND RECOMMENDATION

This cause is before the court on Plaintiff's amended civil rights complaint filed pursuant to 42 U.S.C. § 1983 (doc. 19). Leave to proceed in forma pauperis has been granted (doc. 8).

Because Plaintiff is proceeding in forma pauperis, the court may dismiss the case if satisfied that the action is "(i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). A complaint is frivolous under section 1915(e) "where it lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325, 109 S. Ct. 1827, 1833, 104 L. Ed. 2d 338 (1989). Dismissals on this ground should only be ordered when the legal theories are "indisputably meritless," *id.*, 490 U.S. at 327, or when the claims rely on factual allegations that are "clearly baseless." Denton v. Hernandez, 504 U.S. 25, 31, 112 S. Ct. 1728, 1733, 118 L. Ed. 2d 340 (1992). Dismissals for failure to state a claim are governed by the same standard as Federal Rule of Civil Procedure 12(b)(6). Mitchell v. Farcass, 112 F.3d 1483, 1485 (11th Cir. 1997). The allegations of the complaint are taken as true and are construed in the light most favorable to Plaintiff. Davis v. Monroe County Bd. Of Educ., 120 F.3d 1390, 1393 (11th Cir. 1997). However, such acceptance should not be given blindly; only well-pleaded factual allegations are taken as true, and only reasonable inferences are drawn in favor of the plaintiff. *See* Oladeinde v. City of Birmingham, 963 F.2d 1481, 1485 (11th Cir. 1992); Marrero v. City of Hialeah, 625 F.2d 499, 502 (5th Cir. 1980);[1] *see also* Long v. Satz, 181 F.3d 1275, 1278 (11th Cir. 1999) (per curiam)

---

[1] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as precedent all of the decisions of the former Fifth Circuit decided prior to October 1, 1981.

("reasonable inferences" drawn); Associated Builders, Inc. v. Ala. Power Co., 505 F.2d 97, 100 (5th Cir. 1974) ("unwarranted deductions of fact are not admitted as true"). A plaintiff must allege more than mere "labels and conclusions"; the complaint must include "[f]actual allegations . . . [sufficient] to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1964–65, 167 L. Ed. 2d 929 (2007) (citations and internal quotations omitted). Indeed, "any conclusory allegations, unwarranted deductions of fact or legal conclusions masquerading as facts do not prevent dismissal." Weissman v. Nat'l Ass'n of Sec. Dealers, 500 F.3d 1293, 1305 (11th Cir. 2007) (en banc) (Tjoflat, J., dissenting) (citing Associated Builders, Inc., 505 F.2d at 99). The complaint may be dismissed if the facts as pleaded do not state a claim to relief that is plausible on its face. *See* Bell Atl. Corp., *supra* (retiring the often-criticized "no set of facts" language previously used to describe the motion to dismiss standard and determining that because plaintiffs had "not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed" for failure to state a claim). A complaint is also subject to dismissal under Rule 12(b)(6) when its allegations—on their face—show that an affirmative defense bars recovery on the claim. Marsh v. Butler Cnty., Ala., 268 F.3d 1014, 1022 (11th Cir. 2001). Upon review of the amended complaint in the instant case, the court concludes that dismissal of some of Plaintiff's claims is warranted.

I. RELEVANT ALLEGATIONS

Plaintiff names eleven Defendants in this case: Tammy Mangual, a Senior Licensed Practical Nurse ("SLPN") at the Sharp Detention Center in Brevard County, Florida; Dr. Jaun Nunez, a doctor at the detention facility; Scott Clark, a SLPN at Gulf Correctional Institution ("Gulf C.I."), an institution of the Florida Department of Corrections ("FDOC"); Dr. David Saks, a doctor at Gulf C.I.; Ms. Litle, a SLPN at Gulf C.I.; Dr. Wallace, a doctor at Gulf C.I.; L. Cooley, a SLPN at Gulf C.I.; Dr. Sexton, a doctor at Gulf C.I.; Maxwell Steel, an orthopedic surgeon at the Reception and Medical Center ("RMC"), an FDOC institution; Vernon Montoya, a doctor of oncology at RMC; and Paul Schillings, a doctor of oncology at RMC (doc. 19 at 1–4).[2]

Plaintiff states he was incarcerated at the Brevard County detention facility from April of 2010 to approximately January of 2011 (doc. 19 at 7). On July 26 and August 4, 2010, Plaintiff was seen by SLPN Mangual regarding a lump on his right wrist (*see* doc. 2 at 5). SLPN Mangual referred Plaintiff to Dr. Nunez, who examined Plaintiff on November 23, 2010 and December 9, 2010, and advised Plaintiff the lump was a ganglion cyst (*id.*). Dr. Nunez ordered an x-ray, advised

---

[2] The page references used in this Report reflect the page numbers as enumerated in the court's electronic docketing system rather than those Plaintiff may have assigned.

Case No.: 5:11cv315/MMP/EMT

Plaintiff to take Tylenol for pain, and advised him to bring the matter to the attention of the medical staff of the FDOC when he arrived there (doc. 2 at 5; doc. 19 at 7). Plaintiff alleges SLPN Mangual and Doctor Nunez told him to "let the DOC fix him" (doc. 19 at 7).

On January 11, 2011, Plaintiff arrived at Gulf C.I. (doc. 19 at 7). He advised SLPN Clark of the cyst, and Clark advised him to submit a sick call request (*id.*). Plaintiff did so and was seen by SLPN Clark on February 9, 2011 (*id.*). Clark measured the protrusion and noted it was 4 cm x 4 cm, and 2 cm from the wrist; Clark also noted mild redness and bruising to the area (doc. 2 at 5; doc. 19 at 7). Clark ordered an x-ray (*id.*). Plaintiff received the x-ray on February 14, 2011 (doc. 19 at 8). Dr. Saks interpreted the x-ray and found, "rounding soft tissue on the right wrist, mass/cyst" (*id.*).

More than two months later, on May 3, 2011, Plaintiff declared a medical emergency regarding his wrist (doc. 2 at 6; doc. 19 at 8). He was seen by SLPN Litle and advised her that the cyst was getting larger (*id.*). SLPN Litle advised him that the cyst did not meet the criteria for a medical emergency and advised Plaintiff to obtain Tylenol from the dormitory (*id.*). On May 12, 2011, Plaintiff submitted a sick call request, which was received by Dr. Wallace, and two days later, he was seen by SLPN Cooley (*id.*). SLPN Cooley told Plaintiff the cyst did not meet the criteria for a "DME" and advised him to obtain Tylenol or ibuprofen from the dormitory for pain (doc. 2 at 6; doc. 19 at 8). On May 16, 2011, Plaintiff submitted a sick call request and was seen by SLPN Clark, who measured the cyst at 5 cm x 5 cm (*id.*). Plaintiff filed a formal grievance and was told he had an appointment scheduled to see Dr. Sexton on May 24, 2011 (*id.*). On May 24, Dr. Sexton examined the cyst, agreed that it was growing rapidly and required attention, and advised Plaintiff to consent to a referral to a specialist at RMC (*id.*).

On June 9, 2011, Plaintiff was transported to RMC (doc. 19 at 9). Dr. Steel, an orthopedic surgeon, examined him on June 28, 2011, and scheduled surgery for August 15, 2011 (*id.*). Dr. Steel performed surgery on August 15, and sent a sample of the growth to a laboratory for testing (doc. 2 at 6; doc. 19 at 9). At a follow-up appointment on August 29, 2011, Dr. Steel advised Plaintiff that the lab results indicated he had synovial sarcoma, a form of soft tissue cancer (*id.*). Plaintiff asked Dr. Steel why a biopsy was not performed prior to surgery, and Dr. Steel responded that based upon his review of the x-ray, he did not think he was removing anything more than a cyst (doc. 19 at 9–10).

Plaintiff states Dr. Steel referred him to Dr. Montoya, an oncologist, on September 17, 2011, who advised Plaintiff that radiation treatment was necessary and referred him to Dr. Schillings, another oncologist (doc. 19 at 10). Plaintiff was seen by Dr. Schillings on October 17, 2011, and radiation treatments began the next day (*id.*). Dr. Schillings scheduled twenty-five (25) radiation

treatments (*id.*). Prior to the conclusion of the scheduled radiation treatments, Dr. Schillings advised Plaintiff he would require another surgery to remove remaining cancer (*id.*). Plaintiff was referred back to Dr. Montoya, who saw Plaintiff on December 21, 2011, and referred him back to Dr. Steel, the orthopedic surgeon (*id.*). Plaintiff saw Dr. Steel on January 30, 2012, and he ordered a consultation with Dr. Shillings as well as an MRI and physical therapy (*id.* at 11). Plaintiff met with a physical therapist on February 6, 2012 (*id.*).

Plaintiff claims that Defendants' failure to earlier diagnose the cancer and the delays between referrals constituted a deprivation of adequate medical care, in violation of the Eighth Amendment (doc. 19 at 8–12). He states he suffers restricted use of his right arm due to the alleged constitutional violation (*id.* at 11). As relief, Plaintiff seeks compensatory damages for pain, suffering, and mental stress, in the amount of $3,000,000.00, plus an additional $300,000.00 from each Defendant (*id.* at 12).

## II. ANALYSIS

As Plaintiff was previously advised, medical treatment violates the Eighth Amendment "only when it is 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.'" Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991) (citing Rogers v. Evans, 792 F.2d 1052, 1058 (11th Cir. 1986)). Incidents of mere negligence or malpractice do not rise to the level of constitutional violations. *Id.* (citing Estelle v. Gamble, 429 U.S. 97, 106, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976)).

Stating an Eighth Amendment claim of denial of adequate medical care requires satisfying both an objective and subjective component. Taylor v. Adams, 221 F.3d 1254, 1257 (11th Cir. 2000). First, there must be conduct by prison officials which, objectively speaking, is "sufficiently serious" to constitute a deprivation "'denying the minimal civilized measure of life's necessities.'" *Id.* (quoting Wilson v. Seiter, 501 U.S. 294, 298, 111 S. Ct. 2321, 115 L. Ed. 2d 271 (1991) (internal quotation omitted)). Second, the prison officials must possess a subjective intent to use the medical deprivation as a means of punishment. *Id.* (citations omitted).

Both the objective and subjective components encompass two subsidiary requirements. Taylor, 221 F.3d at 1258. As to the objective prong, an objectively serious deprivation requires showing an objectively "serious medical need." Estelle, 429 U.S. at 104. A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Hill v. DeKalb Regional Youth Detention Center, 40 F.3d 1176, 1186 (11th Cir. 1994), *abrogated on other grounds by* Hope v. Pelzer, 536 U.S. 730, 122 S. Ct. 2508, 153 L. Ed. 2d 666 (2002); *see* Farmer v. Brennan, 511 U.S. 825, 834, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994) (serious medical need is one that, if

left unattended, "pos[es] a substantial risk of serious harm."). In addition, an objectively serious deprivation requires showing the response made by the defendant to that need was so deficient as to constitute "an unnecessary and wanton infliction of pain." Estelle, 429 U.S. at 105–06 (internal quotation marks omitted); *see* Taylor, 221 F.3d at 1257; *see also* Adams v. Poag, 61 F.3d 1537, 1543–44 (11th Cir. 1995).

To show the required subjective intent to punish, the plaintiff must demonstrate that the defendant acted with an attitude of "deliberate indifference." Estelle, 429 U.S. at 105. "Deliberate indifference has three components: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence." Farrow v. West, 320 F.3d 1235, 1245–46 (11th Cir. 2003) (citing McElligott v. Foley, 182 F.3d 1248, 1255 (11th Cir. 1999) and Taylor, 221 F.3d at 1258 (stating that defendant must have subjective awareness of an "objectively serious need" and that his response must constitute "an objectively insufficient response to that need")).

A complete denial of readily available treatment for a serious medical condition constitutes deliberate indifference. Harris v. Coweta County, 21 F.3d 388, 393 (11th Cir. 1994). However, where the inmate has received medical treatment, and the dispute is over the adequacy of that treatment, courts should be reluctant to question the accuracy or appropriateness of the medical judgments that were made. Harris, 941 F.2d at 1507 (quoting Waldrop v. Evans, 871 F.2d 1030, 1035 (11th Cir. 1989)). To do otherwise would be "to constitutionalize claims that sound in tort law." Hamm v. DeKalb County, 774 F.2d 1567, 1575 (11th Cir. 1985) (quotation omitted).

A delay in providing medical treatment can constitute deliberate indifference. Estelle, 429 U.S. at 104–05. However, "[a]n inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed." Townsend v. Jefferson County, 582 F.3d 1252, 1259 (11th Cir. 2009).

In the instant case, Plaintiff's allegations fail to show that SLPN Clark, Dr. Saks, Dr. Sexton, Dr. Steel, or Dr. Wallace acted with deliberate indifference, as opposed to mere negligence. SLPN Clark, Dr. Saks, and Dr. Sexton monitored the size of the growth on Plaintiff's wrist and obtained an x-ray. Dr. Saks reviewed the x-ray, and concluded that the growth was a cyst. When the growth increased in size, they scheduled Plaintiff to see a specialist, Dr. Steel, who also reviewed the x-ray and concluded that the growth was cyst. Thereafter, Dr. Steel performed surgery. Dr. Wallace scheduled an appointment with medical personnel two days after he received Plaintiff's sick call request. These facts do not suggest a response so deficient as to constitute an unnecessary and wanton infliction of pain. Further, the facts do not suggest that Defendant Clark, Saks, Sexton,

Steel, or Wallace subjectively knew that the periods of delay between Plaintiff's medical appointments and his surgery (only six months elapsed from the time Plaintiff first saw SLPN Clark in February of 2011 and the date of his surgery in August the same year) posed a substantial risk of serious harm to his health. Additionally, to the extent Plaintiff alleges that Dr. Saks and Dr. Steel misdiagnosed the growth, his allegations implicate—at most—a claim of negligence or medical malpractice. Similarly, Plaintiff's argument that SLPN Clark, Dr. Saks, Dr. Sexton, Dr. Steel, or Dr. Wallace should have biopsied the lump prior to surgery is merely an invitation for the court to question the appropriateness of the medical judgments that were made, which this court may not do. *See* Adams, 61 F.3d at 1545 (whether defendants "should have employed additional diagnostic techniques or forms of treatment 'is a classic example of a matter for medical judgment' and therefore not an appropriate basis for grounding" constitutional liability). Plaintiff's allegations thus fail to establish that these Defendants possessed a subjective intent to use medical deprivation as a means to punish him. Taylor, 221 F.3d at 1257 (citations omitted). Therefore, Plaintiff has failed to state a plausible Eighth Amendment claim against SLPN Clark, Dr. Saks, Dr. Wallace, Dr. Sexton, and Dr. Steel.

Plaintiff has likewise failed to state claim against his post-surgery oncologists, Dr. Montoya and Dr. Schillings. The basis of Plaintiff's Eighth Amendment claim in this case is Defendants' failure to biopsy the lump sooner, that is, prior to Dr. Steel's doing so at the time of Plaintiff's surgery on August 15, 2011. However, since Drs. Montoya and Schillings were involved in Plaintiff's medical treatment after the mass had been tested, there is no basis to hold them liable. Additionally, to the extent Plaintiff complains that time elapsed between referrals to and from Drs. Montoya and Schillings, with no medical treatment, his factual allegations show that the delays were not unreasonable.[3] Further, the facts do not plausibly suggest Plaintiff suffered any detrimental effect from the delays. Moreover, Plaintiff's factual allegations do not suggest the delays on the part of either doctor were deliberate or used as a means to punish him. Therefore, Plaintiff failed to state an Eighth Amendment claim against Dr. Montoya and Dr. Schillings.

With regard to Defendants Litle and Cooley, although the facts may be sufficient to suggest deliberate indifference on their parts, the facts do not plausibly suggest that Plaintiff suffered a compensable injury during the thirteen-day delay (May 3–16, 2011) in treatment that their conduct caused. Subsection (e) of 42 U.S.C. § 1997e states that "[n]o Federal civil action may be brought

---

[3] Less than three weeks elapsed between Plaintiff's post-surgical consultation with Dr. Steel, at which time Dr. Steel referred Plaintiff to Dr. Montoya, and Plaintiff's consultation with Dr. Montoya. Further, only four weeks elapsed between Plaintiff's consultation with Dr. Montoya and his consultation with Dr. Schillings. Plaintiff's radiation treatment began the day after his consultation with Dr. Schillings.

Case No.: 5:11cv315/MMP/EMT

by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." The Eleventh Circuit has decided that the phrase "Federal civil actions" means all federal claims, including constitutional claims. Napier v. Preslicka, 314 F.3d 528, 532 (11th Cir. 2000) (citing Harris v. Garner, 216 F.3d 970, 984-85 (11th Cir. 2000) (en banc)). In order to satisfy section 1997e(e), a prisoner must allege more than a de minimis physical injury. Harris v. Garner, 190 F.3d 1279, 1286–87 (11th Cir. 1999), *reh'g en banc granted and opinion vacated*, 197 F.3d 1059 (11th Cir. 1999), *opinion reinstated in pertinent part en banc*, 216 F.3d 970 (11th Cir. 2000)) ("We therefore join the Fifth Circuit in fusing the physical injury analysis under section 1997e(e) with the framework set out by the Supreme Court in Hudson [v. McMillian, 503 U.S. 1, 112 S. Ct. 995, 117 L. Ed. 2d 156 (1992)] for analyzing claims brought under the Eighth Amendment for cruel and unusual punishment, and hold that in order to satisfy section 1997e(e) the physical injury must be more than de minimis, but need not be significant."); Osterback v. Ingram, 2000 WL 297840, 13 Fla. L. Weekly D 133 (N.D. Fla. 2000), *aff'd*. 263 F.3d 169 (11th Cir. 2001) (Table), *cert. denied*, 536 U.S. 906, 122 S. Ct. 2362, 153 L. Ed. 2d 183 (2002) (holding that a prisoner plaintiff may not recover compensatory or punitive damages for mental or emotional injury without establishing that he suffered more than de minimis physical injury).

In the instant case, the only relief sought by Plaintiff is compensatory damages for pain and suffering and mental stress (doc. 19 at 12). However, as previously noted, his allegations against Defendants Litle and Cooley do not plausibly suggest he suffered more than a de minimis physical injury during the 13-day delay in treatment that their conduct caused. Further, Plaintiff admits both of these Defendants advised him that Tylenol and ibuprofen were available in his dormitory to alleviate any physical pain. Moreover, even if Plaintiff's claim for relief was construed as a request for punitive damages, as previously discussed, recovery of such damages is barred by § 19997e(e) in the absence of facts suggesting he suffered more than de minimis physical injury. *See* Osterback, 2000 WL 297840. Therefore, Plaintiff cannot recover against either of these Defendants.

Finally, in light of the recommendations of the undersigned that Plaintiff's claims against SLPN Clark, Dr. Saks, Dr. Wallace, Dr. Sexton, SLPN Litle, SLPN Cooley, Dr. Steel, Dr. Montoya, and Dr. Schillings be dismissed, the undersigned additionally recommends that this case be transferred to the Middle District of Florida for disposition of Plaintiff's claims against the remaining Defendants, SLPN Mangual and Dr. Nunez, pursuant to 28 U.S.C. § 1404(a).[4] A district

---

[4] As explained in Dubin v. United States, 380 F.2d 813, 816 (5th Cir. 1967), "[i]n substance, § 1404 is the statutory enactment of the doctrine of forum non conveniens tempered to allow transfer rather than dismissal. By contrast, § 1406 operates in cases where the first forum chosen is improper in the sense that the litigation may not proceed there."

Case No.: 5:11cv315/MMP/EMT

court may transfer any case to any other district where the case originally may have been brought. 28 U.S.C. § 1404(a). To transfer an action under section 1404(a) the following criteria must be met: (1) the action could have been brought in the transferee district court; (2) a transfer serves the interest of justice; and (3) a transfer is in the convenience of the witnesses and parties. *See* Robinson v. Giarmarco & Bill, P.C., 74 F.3d 253, 260 (11th Cir. 1996). The court's consideration of the § 1404(a) factors may include such criteria as the plaintiff's initial choice of forum, the convenience of the parties, the convenience of the witnesses, the relative ease of access to sources of proof, the location of relevant documents, the availability of compulsory process for witnesses, the financial ability to bear the cost of the change, and trial efficiency. *See* Tampa Bay Storm, Inc. v. Arena Football League, Inc., 932 F. Supp. 281, 282 (M.D. Fla. 1996). Federal courts ordinarily accord deference to a plaintiff's choice of forum; however, in this case it is evident that the Middle District of Florida is more convenient for the parties and witnesses, and continuing this litigation there would be in the interest of justice.

The decision to transfer an action pursuant to § 1404(a) is left to the "sound discretion of the district court and [is] reviewable only for an abuse of that discretion." Roofing & Sheeting Metal Serv. v. La Quinta Motor Inns, 689 F.2d. 982, 985 (11th Cir. 1982); *see also* Brown v. Connecticut Gen. Life Ins. Co., 934 F.2d 1193, 1197 (11th Cir. 1991). Such transfers may be made sua sponte by the district court. Mills v. Beech Aircraft Corp., 886 F.2d 758, 761 (5th Cir. 1989); Robinson v. Madison, 752 F. Supp. 842, 846 (N.D. Ill. 1990) ("A court's authority to transfer cases under § 1404(a) does not depend upon the motion, stipulation or consent of the parties to the litigation."); Empire Gas Corp. v. True Value Gas of Florida, Inc., 702 F. Supp. 783, 784 (W.D. Mo. 1989); *accord* Roofing & Sheeting, 689 F.2d at 991 n.14.

In this case, analysis of the relevant factors leads the undersigned to conclude that the convenience of the parties and witnesses and the interest of justice favor transfer. The convenience of the parties weighs in favor of transfer to the Middle District, since the remaining Defendants are located there. As to convenience of witnesses and the availability of compulsory process for witnesses, it appears that most of the witnesses are party witnesses who reside and work in the Middle District. Additionally, sources of proof, including relevant medical documents, would be more readily accessible in the Middle District, since the events underlying the remaining claims occurred there. Finally, transferring venue to the Middle District would result in no additional financial cost to the parties. Therefore, consideration of the relevant factors leads the undersigned to conclude that this action should be transferred to the United States District Court for the Middle

---

Case No.: 5:11cv315/MMP/EMT

District of Florida for disposition of Plaintiff's claims against the remaining Defendants, SLPN Mangual and Dr. Nunez.

Accordingly, it respectfully **RECOMMENDED**:

1. That Plaintiff's claims against SLPN Clark, Dr. Saks, Dr. Wallace, Dr. Sexton, SLPN Litle, SLPN Cooley, Dr. Steel, Dr. Montoya, and Dr. Schillings be **DISMISSED with prejudice** pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim upon which relief may be granted.

2. That Defendants SLPN Clark, Dr. Saks, Dr. Wallace, Dr. Sexton, SLPN Litle, SLPN Cooley, Dr. Steel, Dr. Montoya, and Dr. Schillings be **DISMISSED** as parties from this lawsuit.

3. That the clerk **TRANSFER** this case to the United States District Court for the Middle District of Florida for disposition of Plaintiff's claims against SLPN Mangual and Dr. Nunez, the remaining Defendants.

4. That the clerk be directed to close this case.

At Pensacola, Florida this 17th day of April 2012.

/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**

**NOTICE TO THE PARTIES**

**Objections to these proposed findings and recommendations may be filed within fourteen (14) days after being served a copy thereof. Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control. A copy of objections shall be served upon the magistrate judge and all other parties. Failure to object may limit the scope of appellate review of factual findings.** *See* **28 U.S.C. § 636; United States v. Roberts, 858 F.2d 698, 701 (11th Cir. 1988).**